**Opinion filed September 22, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00092-CV

_____

## IN THE INTEREST OF J.M., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 8031-CX**

### MEMORANDUM OPINION

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the father of J.M. The mother timely filed a notice of appeal; the father did not appeal. On appeal, the mother presents three issues in which she challenges the legal and factual sufficiency of the evidence. We affirm.

I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational

trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001(b).

After the final hearing in this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (N) and (O). Specifically, the trial court found that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child, that Appellant had constructively abandoned the child, and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now

and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence at Trial*

The record shows that the Department originally removed J.M. in October 2013 when he was seven years old. At that time, Appellant was incarcerated; she had been convicted of the offense of aggravated assault around November 2012. Appellant left J.M. and her other two children in the care of the children's elderly grandparents, but after J.M. set their home on fire and exhibited other defiant behaviors, the grandparents could no longer care for the children. J.M. and his siblings went to live at Hendrick Home for Children, but J.M. was asked to leave because of his behavioral issues after he destroyed property, smeared feces on the wall, disobeyed the rules, and failed to get along with his peers. Consequently, the Department took custody of J.M. He was initially admitted to Abilene Behavioral Health and, in December 2013, was placed at New Horizons Ranch, where he remained at the time of trial. J.M. was diagnosed with various disorders, including mood disorder, ADHD, and oppositional defiant disorder.

Appellant was released on parole for a period of time in 2014, and she visited J.M. at New Horizons. However, after several visits, New Horizons refused to supervise any future visits and would not permit Appellant to return to New Horizons because Appellant had been "very combative with staff, very

argumentative" during the visits at New Horizons. Appellant's behavior during visitation was problematic for J.M., and it became apparent that visits with his mother were not in J.M.'s best interest.

Due to the statutory deadline in this type of proceeding, the trial court dismissed the initial termination proceeding, and the Department refiled it in April 2015. The final hearing was held in March 2016. While the refiled cause was pending, Appellant was incarcerated three times for parole violations and spent three months in confinement each time. Thus, Appellant was confined for nine of the eleven months that this case was pending. The Department's caseworker testified that Appellant did not comply with her family service plan and that Appellant did not send any letters to J.M. According to the caseworker, the last contact that Appellant had with J.M. was in October 2014.

On the other hand, Appellant testified that she sent letters to J.M. and that, every time she gets released, she has tried to visit J.M. and arrange for the classes that she needs to take to comply with her service plan. Appellant testified that she gets "the runaround" from the Department and that she has completed as many of the services in her service plan as she could. A supervisor for the Department testified about the services that the Department attempted to arrange for the mother during this case. However, Appellant kept getting rearrested due to her parole violations, which inhibited the provision of services.

The caseworker and her supervisor both testified that it would be in J.M.'s best interest for Appellant's parental rights to be terminated. The caseworker testified that J.M.'s behavior improved at New Horizons. Although he initially struggled, by the time of trial, he no longer had aggressive outbursts, had been able to form significant relationships with the staff, got along better with his peers, and seldom acted out in defiance. The staff at New Horizons believe that J.M. is adoptable, and the Department's goal for him is unrelated adoption. The record

4

contains no evidence related to the desires of the child, but after discussions with J.M., his counselors thought that he was emotionally ready for adoption. The supervisor testified that, at the time of trial, a prospective adoptive family had been located and that J.M. was ready to be adopted.

## III. *Analysis*

Appellant argues in her first issue on appeal that the evidence is insufficient with respect to subsection (N) because the Department failed to present clear and convincing evidence that she constructively abandoned the child. Under subsection (N), a parent constructively abandons a child if the child has been in the permanent or temporary managing conservatorship of the Department for at least six months, if the Department has made reasonable efforts to return the child to the parent, if the parent has not regularly visited or maintained significant contact with the child, and if the parent has demonstrated an inability to provide the child with a safe environment. Appellant argues that, because the service plan was filed in the first cause and was not refiled in the second cause, no service plan existed and no reasonable efforts were made to return J.M. to her. Appellant also argues that the Department did not allow her to visit J.M.

The Department presented clear and convincing evidence as to each of the elements under subsection (N). It was undisputed that J.M. had been in the care of the Department for well over six months. Furthermore, the record shows that the trial court specifically approved the service plan from the first cause and made it an order of the court in the second cause. Appellant testified that she had been given the service plan and knew what she was supposed to do to comply. The Department made reasonable efforts to engage Appellant in her service plan so that J.M. could be returned to her, but Appellant's actions caused her to be incarcerated and then, after her release on parole, to be rearrested three times for parole violations while the second cause was pending. Appellant did not comply with her service plan

5

despite having an extended period of time to do so. Additionally, Appellant last saw J.M. in October 2014, and according to the Department's witnesses, Appellant did not even send letters to him. Appellant's visitations with J.M. were terminated because of Appellant's behavior during visitation at New Horizons and because she kept violating her parole and getting arrested. At no point after the initial removal was Appellant able to provide a safe, stable environment for J.M. Additionally, J.M.'s father, Hendrick Home for Children, and Appellant's parents were not viable options to provide J.M. with a safe, stable environment. We overrule Appellant's first issue.

Because we find the evidence sufficient to support termination of Appellant's parental rights under subsection (N), we need not reach her second issue in which she challenges the sufficiency of the evidence to support termination under subsection (O). *See* TEX. R. APP. P. 47.1. A finding that a parent committed any one of the acts under Section 161.001(b)(1)(A)–(T) is sufficient to support termination as long as termination is in the child's best interest.

In Appellant's third issue, she challenges the trial court's finding that termination of her parental rights would be in the best interest of the child. We note that the trier of fact is the sole judge of the credibility of the witnesses at trial and that we are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573.

Based upon the *Holley* factors and the evidence in the record, we cannot hold that the best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. From the evidence at trial with respect to J.M.'s emotional and physical needs, the parental abilities of those involved, the programs available to assist with J.M.'s care, the Department's plan for J.M., the stability of that plan, the instability of Appellant's home, the acts or omissions of Appellant, and her excuses for those acts and omissions, the trier of fact could reasonably have

formed a firm belief or conviction that it would be in J.M.'s best interest for Appellant's parental rights to be terminated. We hold that the evidence is both legally and factually sufficient to support the trial court's best interest finding. Appellant's third issue is overruled.

IV. <em>This Court's Ruling</em>

We affirm the trial court's order of termination.


                                         MIKE WILLSON

                                         JUSTICE


September 22, 2016

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.